IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KAREN L. FLEETWOOD                                                                PLAINTIFF

v.                                    Civil No. 08-2069

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                    DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Karen Fleetwood, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for period of disability, disability insurance benefits (DIB), and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423.  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**Procedural Background:**

The plaintiff filed her applications for DIB and SSI on May 8, 2006, alleging an amended onset date of May 8, 2006[1], due to back pain and problems with her right knee.  (Tr. 51-55, 105-106, 248-250).  An administrative hearing was held on September 25, 2007.  (Tr. 29, 266-309). Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 39 years old and possessed a high school education.  (Tr. 51, 271).  The record reveals that she has past relevant work experience

---

[1] Plaintiff initially alleged March 12, 2005, as her onset date.  However, at the administrative hearing, this was amended to May 8, 2006. (Tr. 286).

AO72A
(Rev. 8/82)

("PRW") as a telemarketer, merchandise marker, and general office clerk. (Tr. 20, 77-84, 110, 248, 271-286, 298-300).

On November 30, 2007, the Administrative Law Judge ("ALJ") concluded that plaintiff's impairments were severe but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 17). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to perform light but could not climb ladders, ropes, or scaffolds and should only occasionally climb ramps and stairs. With the assistance of a vocational expert, the ALJ then concluded that plaintiff could perform her PRW as a merchandise marker, telemarketer, and general office clerk. (Tr. 20).

The plaintiff appealed this decision to the Appeals Council, but her request for review was denied on May 8, 2008. (Tr. 3-6). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 7, 8).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists

in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

**Discussion:**

Of particular concern to the undersigned is the ALJ's determination that plaintiff could perform light work, which requires the ability to stand and/or walk 6 hours out of an 8-hour work day. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."

*Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Records indicate that plaintiff had a history of right medial knee pain with intermittent catching and snapping. (Tr. 114-1). For this, she was prescribed both physical therapy and medication to include a Medrol Dose Pack and Aleve. In October 1997, plaintiff underwent lateral retinacular release surgery. (Tr. 116). Work hardening summaries prepared by physical therapist James Honey indicate that plaintiff missed many of her appointments. (Tr. 146-176).

In May 1998, plaintiff's right knee collapsed, causing her to fall and injure her back. At this time, she was noted to have a lateral nerve entrapment problem. (Tr. 124). Neurontin and pain relief patches were prescribed to no avail. (Tr. 196, 198-199). Plaintiff underwent a second surgical procedure on her right knee in July 1998, which revealed a significant lesion of the articular surface of the medial femoral condyle. This was shaved, but plaintiff continued to experience problems with pain and instability. (Tr. 183-193). By September 1998, she was noted to have reached her maximum level of healing with a 15% overall impairment rating. (Tr. 126). Dr. James Buie indicated that she would be limited in doing repetitive stooping, bending, heavy lifting, and prolonged walking. (Tr. 221). He also indicated that if her condition

4

continued to deteriorate, she could require further arthroscopy, arthrotomy, and/or possible joint replacement at some point in the future. (Tr. 221).

Plaintiff continued to report problems, and lumbar sympathetic blocks were preformed with only limited success. (Tr. 177, 180-182, 194). An MRI conducted in October 1999 showed the anterior and posterior cruciate to be intact without evidence of a meniscal tear. (Tr. 206, 212). Regular x-rays also showed some narrowing of the medial joint. Further, diagnostic arthroscopies had shown some significant arthritic changes involving the articular surfaces. In 2000, plaintiff was diagnosed with medial collateral ligament tendinitis with evidence of medial joint pain with a prior diagnosis of chondromalacia and an osteochondral defect with arthritic changes involving the medial femoral condyle. (Tr. 203).

On July 25, 2006, plaintiff underwent a general physical examination. (Tr. 223-229). Plaintiff complained of knee pain, reporting the left one to be worse than the right, and back problems. In spite of undergoing multiple surgeries, plaintiff stated that it felt as though bone were rubbing against bone inside her knee. A physical examination did reveal a limited range of motion in the lumbar spine and right knee. Although her range of motion was normal in all other areas, she reported experiencing pain. The doctor also noted that plaintiff walked with a limp, could not walk on her heel and toes, and could not squat and arise from a squatting position. On x-rays, he noted joint space narrowing and osteophytes on the right knee, and joint space narrowing and subchondral sclerosis of the lumbar spine. As such, he diagnosed plaintiff with degenerative arthritis of the lumbosacral spine, spina bifida occulta, and degenerative arthritis of the right knee. He indicated that plaintiff claimed limitations in the ability to walk,

5

stand, sit, and carry. However, the doctor stated that the severity of these limitations was undetermined. (Tr. 223-229).

On August 24, 2006, plaintiff reported problems with her left knee. (Tr. 245-246). Dr. Buie noted it had been a while since plaintiff had been in for treatment. She stated that this was due to a lack of insurance. Plaintiff reported a history of stiffness, pain, some swelling, catching, and giving way with significant patella femoral crepitation. An examination revealed resistance with range of motion of the left knee, but no effusion. Plaintiff appeared to have a little bit of a lateral angle of the patella in regard to the femur but no apparent dislocation. She had plus two to three patella femoral crepitus and had a range from 0 degrees to about 130 degrees, although very guarded. No pivot shift, no right to right sign was seen, and no popliteal fullness were noted. She did have some calf tenderness. In her right knee, plaintiff had a range from 0 degrees to 135 degrees. She had two to three patella femoral crepitus, no popliteal fullness, calf tenderness, and no evidence of internal arrangement. Dr. Buie opined that she was likely suffering from an internal arrangement, however he could not be absolutely sure. He reviewed her x-rays, which showed no wearing on the medial lateral joint surfaces. His impression was simply that of a normal knee on the left with some osteoporosis. Dr. Buie then recommended she undergo an MRI. (Tr. 245-246).

On September 12, 2006, plaintiff complained of pain and discomfort involving her left knee. (Tr. 243). She had been evaluated in August for increased discomfort at which time Dr. Buie was unable to find any particular evidence of loosening or abnormality of the collateral ligament or of the anterior cruciate ligament. An MRI was obtained that showed a lateral tibial plateau bone bruise but was otherwise normal. Plaintiff's examination revealed no palpable

fullness although she had evidence of meniscal sign. It was recommended that she start on a quadriceps program and she was prescribed a Neoprene support for her left knee. (Tr. 243).

The only true RFC assessment contained in the file was prepared by a non-examining, consultative doctor. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). On July 30, 2006, Dr. Steve Owens completed a physical RFC assessment. (Tr. 230-242). After reviewing plaintiff's medical records, Dr. Owens concluded that plaintiff could lift 25 pounds frequently and 50 pounds occasionally, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. No other limitations were noted. (Tr. 230-242). However, we agree with the ALJ's determination that plaintiff's condition warranted stricter limitations than those imposed by Dr. Owens.

After reviewing the medical evidence before the ALJ, we are of the opinion that substantial evidence does not support the ALJ's determination that plaintiff could perform light work. Plaintiff's own treating surgeon indicated in 1998 that plaintiff should avoid repetitive stooping, bending, heavy lifting, and prolonged walking. (Tr. 221). *See Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730 (8th Cir. 2003) (holding that a treating physician's opinion is generally entitled to substantial weight). There is, however, nothing to suggest that these limitations were temporary. Given plaintiff's history, we find Dr. Buie's limitations to be supported by the evidence. During her general physical examination in 2006, the examiner noted that plaintiff had a limited range of motion in her lumbar spine and her right knee. At this time, she walked with a limp, could not walk on her heel and toes, and could not squat and arise from a squatting position. *See Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (holding that

7

Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist). Clearly, plaintiff suffered from some limitation in her ability to stand and/or walk. As such, we find that remand is necessary to allow the ALJ to reassess plaintiff's RFC, specifically, her ability to stand and/or walk, balance, crouch, crawl, kneel, and stoop.

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 25th day of August 2009.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)